# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| VALERIE R., )<br>)<br>    *Plaintiff* )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>*Acting Commissioner of Social Security,* )<br>)<br>    *Defendant* ) | No. 1:17-cv-00469-DBH |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ (i) erroneously evaluated the opinion evidence of record, (ii) erroneously evaluated her testimony regarding her symptoms and limitations, and (iii) failed to obtain medical expert testimony pursuant to Social Security Ruling 83-20 ("SSR 83-20"). *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 16) at 1. I find no error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

through December 31, 2009, Finding 1, Record at 19; that, through her date last insured ("DLI"), she had the severe impairments of scoliosis and sciatica, Finding 3, *id*. at 20; that, through her DLI, she had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with additional limitations not relevant here, Finding 5, *id*. at 22; that, through her DLI, considering her age (50 years old, defined as an individual closely approaching advanced age, on her DLI), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could have performed, Findings 7-10, *id*. at 25-26; and that she, therefore, had not been disabled at any time from June 2, 2008, her alleged onset date of disability, through her DLI, December 31, 2009, Finding 11, *id*. at 27. The Appeals Council declined to review the decision, *id*. at 1-3, making the ALJ's decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the

commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Weighing of Opinion Evidence

The plaintiff first takes issue with the ALJ's assignment of little weight to the opinions of two treating physicians, Markos Poulopoulos, M.D., and Stratton John Shannon, D.O. *See* Statement of Errors at 5-8. As the plaintiff observes, *see id*. at 5, an ALJ must supply "good reasons" for the weight given to the opinion of a treating source, 20 C.F.R. § 404.1527(c)(2). She contends that the ALJ failed to do so here because his findings regarding both the Poulopoulos and Shannon opinions were erroneous and unsupported by substantial evidence. *See* Statement of Errors at 5. The commissioner counters that the ALJ supplied the requisite good reasons, supported by substantial evidence, for his assignment of little weight to both. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 18) at 2-7. I agree.

#### 1. Opinion of Dr. Poulopoulos

The ALJ acknowledged that Dr. Poulopoulos, a neurologist who diagnosed the plaintiff with cerebellar ataxia in 2015, expressed the opinion in a May 2, 2016, letter that, although "[i]t has not been determined to be exact, . . . [the plaintiff] has probably more than a 10 year history of progressive ataxia." Record at 20, 920. However, the ALJ gave that opinion little weight, determining that the plaintiff did not have a medically determinable impairment of cerebellar ataxia prior to her DLI of December 31, 2009. *See id*. at 20.[2]

---

[2] In turn, this finding was fatal to the plaintiff's claim for disability to the extent predicated on the existence of cerebellar ataxia prior to her DLI. "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service*, Rulings 1983-1991 (Supp. 2018) ("SSR 96-7p"), at 132.

3

The ALJ supplied two reasons for assigning little weight to the Poulopoulos opinion: that it was "based at least in part on the subjective reporting" of the plaintiff, which he deemed unreliable and, hence, could not credit, and that "there [was] no corroborating evidence in the contemporaneous medical records" that she was falling on a regular basis prior to her DLI. *Id*. at 20-21. On the first point, he elaborated:

> While I do not see an effort on behalf of the [plaintiff] to mislead, the record suggests her reporting is somewhat unreliable. Specifically, while [she] reported to Dr. Poulopoulos that her symptoms of imbalance with falling started approximately 9 years ago, she told [Suzanne M. Bourque, M.D.] that "her gait was not abnormal prior to the frostbite injury" in 2014. At a visit with Dr. Bourque in 2014, the [plaintiff] reported that some of her decline in functioning predated the frostbite injury in 2014. However, the [plaintiff]'s daughter-in-law was present for the appointment and explained that there had been a "relatively subacute decline over the last year or two." Similarly, while the [plaintiff] testified that she worked for Woolwich School Department through 2009, records document she last worked for the school department in 2004. Given the [plaintiff]'s seemingly unreliable memory, and the lack of corroborating evidence, I cannot credit her reports concerning the onset of her gait abnormalities without additional medical evidence. Since I cannot credit the [plaintiff]'s subjective allegations on this issue, I likewise am unable to give significant weight to Dr. Poulopoulos's opinion concerning onset of ataxia, given that the opinion is based[,] in part, on the [plaintiff]'s self-report.

*Id*. (citations omitted).

On the second point, he noted that "even if the [plaintiff]'s recollection is accurate as to when she first began experiencing falls, by all accounts [her] decline has been slow and progressive, and thus while she may have first fallen prior to the [DLI], there is no corroborating evidence in the contemporaneous medical records that those falls occurred on a regular basis." *Id*. at 21 (citation omitted). He stated that he had nonetheless considered all evidence relating to the plaintiff's physical functioning as of her DLI, regardless of whether caused by her documented scoliosis or sciatica or undiagnosed cerebellar ataxia. *See id*.

The plaintiff takes issue with the ALJ's handling of the Poulopoulos opinion on several bases. First, she argues that, although the ALJ cited the 2014 Bourque records as evidence that

4

her gait was not affected by cerebellar ataxia prior to a frostbite injury in 2014, Dr. Bourque was puzzled by her report that her gait was not abnormal prior to the frostbite injury, and her daughter-in-law had known her for only three years, as a result of which the daughter-in-law's "report provides no evidence at all to support the absence of an impairment prior to [her] DLI, contrary to the ALJ's finding." Statement of Errors at 5-6 (citations omitted).

However, as the commissioner rejoins, *see* Opposition at 3, the ALJ did not cite the Bourque records as affirmative evidence that the plaintiff had no gait abnormality prior to her DLI but, rather, as evidence that the plaintiff's own reports were unreliable, as a result of which he was unwilling to credit an opinion predicated on them, *see* Record at 20-21.

Second, the plaintiff contends that the ALJ erred in characterizing the Poulopoulos opinion as based on her "own self-report," noting that she was accompanied by both her daughter and daughter-in-law on the Poulopoulos visit and that her daughter, rather than she, reported to Dr. Poulopoulos that she had first fallen eight to nine years earlier and had balance and memory problems ever since. *See* Statement of Errors at 6-7.

Dr. Poulopoulos did state that the plaintiff's daughter reported that the plaintiff had been having problems for at least eight to 10 years. *See* Record at 911. But, he also indicated that he had taken history from all present (the daughter, the daughter-in-law, and the plaintiff). *See id*. While the plaintiff's daughter reported that the plaintiff's first fall and subsequent balance problems had occurred eight to nine years earlier, the plaintiff was present during the conversation and, more importantly, testified to similar effect at her hearing, stating that she had been falling for no reason approximately every other week in 2009. *See id*. at 41-42. Thus, the ALJ reasonably

5

found that, apparently as a result of memory difficulties, the plaintiff had provided inconsistent (and thus unreliable) reports regarding the onset of her frequent falls.[3]

In turn, the fact that a treating source has predicated his or her opinion at least in part on a claimant's unreliable or inconsistent subjective statements constitutes a good reason for assigning it less weight. *See, e.g., Lumpkin v. Berryhill*, No. 2:17-cv-00081-NT, 2018 WL 640229, at *8 (D. Me. Jan. 31, 2018) (rec. dec., *aff'd* Mar. 29, 2018) (findings that expert's opinion was "partly based on the [claimant]'s subjective allegations and inconsistent with other evidence of record" constituted "good reasons to give little or no weight even to the opinion of a treating source").

Finally, the plaintiff argues that the ALJ erred in assigning little weight to the Poulopoulos opinion on the basis of a lack of corroborating evidence in the contemporaneous medical records that the falls occurred on a regular basis prior to her DLI. *See* Statement of Errors at 7. She contends that, in so finding, the ALJ erroneously required objective evidence of symptoms, rather than an impairment or diagnosis, in violation of Social Security Ruling 16-3p ("SSR 16-3p"). *See id*.

As the commissioner rejoins, *see* Opposition at 4, the ALJ did not state that objective evidence of symptoms was required. Rather, he noted that the absence from the contemporaneous medical records of reports of frequent falls or gait disturbance cut against Dr. Poulopoulos' opinion that the plaintiff's onset date of cerebellar ataxia probably occurred eight or nine years prior to the

---

[3] At oral argument, the plaintiff's counsel contended that the ALJ's primary error was failing to acknowledge that her reports to Dr. Poulopoulos necessarily were corroborated by family members who accompanied her to her appointments and who had actually witnessed her condition prior to her DLI. However, as the ALJ noted, the plaintiff's daughter-in-law told Dr. Bourque in 2014 that there has been a "'relatively subacute decline over the last year or two.'" Record at 20-21 (quoting *id*. at 909). While the plaintiff notes that her daughter-in-law had known her for only three years, *see* Statement of Errors at 6, her daughter-in-law was in a position to gauge the extent to which she had declined in the three years she had known her. In any event, as counsel for the commissioner noted at oral argument, the plaintiff's and her family members' statements could not as a matter of law establish the existence of a medically determinable cerebellar ataxia impairment prior to her DLI. *See, e.g*., SSR 96-7p at 132.

6

time he treated her in 2014-15. *See* Record at 21.[4] This also constituted a good reason for according the Poulopoulos opinion little weight. *See, e.g., Bailey v. Colvin*, No. 2:13-cv-57-GZS, 2014 WL 334480, at *3 (D. Me. Jan. 28, 2014) (upholding ALJ's decision to give little weight to a treating source's opinion when, *inter alia*, contemporaneous treatment notes did not support the degree of limitations assessed); *McGlynn v. Astrue*, No. 1:11-cv-395-DBH, 2012 WL 2913535, at *6-7 (D. Me. June 28, 2012) (rec. dec., *aff'd* July 17, 2012) (upholding ALJ's rejection of treating source's retrospective opinion when ALJ "supportably concluded that, when the [claimant] did seek treatment during the period of time prior to January 22, 2009, he did not report, and his treating providers did not record, signs and symptoms of a disabling level of mental impairment").

### 2. Opinion of Dr. Shannon

Dr. Shannon, the plaintiff's primary care provider, completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical) form dated August 22, 2014, in which he indicated that the plaintiff had a number of substantial physical restrictions, including an inability to lift or carry any weight, stand and/or walk for two hours or more in an eight-hour workday, or reach, handle, finger, or feel for even two and a half hours in an eight-hour workday. *See* Record at 417-20. The ALJ explained:

> Although Dr. Shannon is the [plaintiff]'s primary care physician, I give his opinions little weight for several reasons. Perhaps most importantly, nowhere in the questionnaire is Dr. Shannon asked to express an opinion as to the [plaintiff]'s functioning on or before the [DLI]. For instance, the form asks him to give his professional opinion as to what the [plaintiff] "can" still do, rather than w[hat] she "could" do through the [DLI]. Moreover, examination of the document uncovers that much of Dr. Shannon's opinion is based on impairments that developed subsequent to the [DLI]. For instance, when asked to provide support for the exertional limitations, Dr. Shannon cites the [plaintiff] requiring a cane, and having

---

[4] The ALJ noted, for example, that, (i) "the stated reason for . . . x-rays taken in July 2009 was 'low back pain radiating to the left lower extremity,' with no mention of falls, ataxia, or other significant gait abnormalities[,]" (ii) prior to the plaintiff's DLI, there was "only one isolated reference to the [plaintiff] experiencing a single fall in August 2009, at which time she reported that she fell 'for no reason[,]'" and, (iii) despite that, she was able to go on a "'long hike' in September 2009." Record at 23-24 (citations omitted).

7

> an "almost useless" left hand after her frostbite injuries. Dr. Shannon's consideration, and apparent reliance o[n] post-DLI evidence greatly limits the probative value of this opinion. To the extent that his opinions concerning the [plaintiff]'s back pain are applicable to the period through the [DLI], I find the opinions inconsistent with the [plaintiff]'s course of treatment and examinations described above as well as her testimony that she drove and was independent in all chores (except vacuuming and sweeping) through the [DLI].

*Id*. at 25 (citations omitted).

The plaintiff first complains that, in observing that Dr. Shannon did not address her condition prior to her DLI, the ALJ failed to mention that Dr. Shannon provided his opinion at the request of the Social Security Administration, using the form that it had sent him. *See* Statement of Errors at 8. At oral argument, her counsel contended that the form may not have made clear to Dr. Shannon that he was to address the plaintiff's limitations prior to her DLI.

However, as the commissioner observes, *see* Opposition at 5-6 & n.2, the form included a statement that the opinion expressed therein pertained to the plaintiff's limitations from June 2, 2008, through the present, *see* Record at 420, and the ALJ expressly considered whether the opinion accurately reflected the plaintiff's condition prior to her DLI insofar as it pertained to her documented back pain, concluding that it did not, *see id*. at 25.

The plaintiff next contends that, in deeming Dr. Shannon's opinion inconsistent with her treatment records and activities of daily living prior to her DLI, the ALJ incorporated his erroneous evaluation of her testimony regarding her symptoms and limitations. *See* Statement of Errors at 8. I find no error in that evaluation for the reasons discussed below.

At bottom, the ALJ offered good reasons for according the Shannon opinion little weight: that it was largely supported by medical findings postdating the plaintiff's DLI and, to the extent it pertained to the period prior to her DLI, was inconsistent with other evidence of record. *See, e.g., Campagna v. Berryhill*, No. 2:16-cv-00521-JDL, 2017 WL 5037463, at *4 (D. Me. Nov. 3,

2017) (rec. dec., *aff'd* Jan. 2, 2018) ("lack of support and inconsistency with other substantial evidence of record are well-recognized bases for affording a treating source's medical opinion little or no weight"). No more was required.

### B. Evaluation of Plaintiff's Testimony

The plaintiff next argues that, in evaluating her testimony regarding her symptoms and limitations, the ALJ contravened the dictates of SSR 16-3p in two respects: that he relied on a lack of corroborating objective medical evidence and drew a negative inference from her failure to seek treatment without considering possible reasons why she may not have done so. *See* Statement of Errors at 8-9. She adds that the ALJ's finding that her testimony was "largely consistent" with the assessed RFC did not apply to her testimony that she experienced frequent falls prior to her DLI due to her later-diagnosed cerebral ataxia. *Id*. at 9-10. Again, I find no error.

As the commissioner observes, *see* Opposition at 10, SSR 16-3p provides that an ALJ "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms *solely* because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual[,]" SSR 16-3p, printed in *West's Social Security Reporting Service*, Rulings 1983-1991 (Supp. 2018), at 741 (emphasis added). The ALJ did not do so here. He provided additional reasons for his evaluation, among them that the plaintiff was recorded to have complained only once, in August 2009, that she had fallen, that she went on a "'long hike'" the following month, and that she sought no medical treatment prior to her DLI for frequent falls. Record at 23-24 (citation omitted). He did not err in relying *in part* on a lack of corroborating objective medical evidence. To the contrary, as the commissioner points out, *see* Opposition at 10, SSR 16-3p describes objective medical evidence as "a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the

effects those symptoms may have on the ability to perform work-related activities[,]" SSR 16-3p at 741.

While SSR 16-3p directs that ALJs will "consider[] possible reasons [a claimant] may not comply with treatment or seek treatment consistent with the degree of his or her complaints[,]" SSR 16-3p at 745, the plaintiff identifies no evidence of her reason(s) for failure to seek treatment prior to her DLI that the ALJ ignored, *see* Statement of Errors at 9.

Finally, the ALJ did not err in describing the plaintiff's testimony as "largely consistent" with his assessed RFC. Record at 24. He did so only after explaining why he did not credit her testimony that she began experiencing frequent falls prior to her DLI. *See id.* at 23-24. He then detailed a number of ways in which, in his view, her testimony aligned with his assessed RFC, *see id.* at 24, none of which the plaintiff separately challenges, *see* Statement of Errors at 9-10.

### C. Failure To Obtain Medical Expert Testimony Pursuant to SSR 83-20

The plaintiff finally argues that the ALJ "should have consulted with a medical advisor to determine the onset date of [her] disability rather than basing his findings regarding her pre-DLI limitations upon his own interpretation of her medical records and testimony." Statement of Errors at 10. The commissioner rejoins that SSR 83-20 was inapplicable because the plaintiff never was determined to have been disabled and, even if it did apply, the medical evidence regarding onset date of disability was not ambiguous, as a result of which the duty to call a medical advisor pursuant to that ruling did not arise. *See* Opposition at 11-12. I need not determine whether the ALJ erred in failing to apply SSR 83-20 because I conclude that, even if it did apply, the duty to call a medical advisor was not triggered.[5]

---

[5] The plaintiff argued for the application of SSR 83-20 on the basis that, although she was not found currently disabled because she was financially ineligible for Supplemental Security Income ("SSI"), or Title XVI, benefits, "the ALJ acknowledged . . . that the record established significant evidence of disability subsequent to [her] DLI[.]" Statement

10

SSR 83-20 provides, in pertinent part:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

SSR 83-20, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 51.

SSR 83-20 "instructs an ALJ to consult a medical expert when the ALJ must infer a claimant's date of disability onset on the basis of ambiguous medical evidence." *Fischer v. Colvin*, 831 F.3d 31, 32 (1st Cir. 2016). If "the medical evidence [i]s not ambiguous[,]" an ALJ need not "draw inferences as to whether [a claimant's] onset date preceded the expiration of her insured status[,]" and SSR 83-20 does "not require the ALJ to consult a medical expert." *Id.*

As the commissioner argues, *see* Opposition at 11-12, the medical evidence concerning the plaintiff's onset date of disability was not ambiguous. First, as the commissioner notes, *see id.*, agency nonexamining consultant Donald Trumbull, M.D., reviewed the available contemporaneous evidence of record, opining on December 24, 2014, that there was insufficient evidence to evaluate the plaintiff's impairments as of her DLI, *see* Record at 70. Such a finding by an agency consultant "cut[s] against, rather than supporting, a finding of ambiguity" for purposes of SSR 83-20. *McGlynn*, 2012 WL 2913535, at *5.[6]

---

of Errors at 10. As counsel for the commissioner noted at oral argument, in so contending, the plaintiff seemingly invoked *Kelly v. Astrue*, No. 06-168-P-S, 2007 WL 2021923 (D. Me. July 11, 2007) (rec. dec., *aff'd* Aug. 27, 2007), in which this court held that SSR 83-20 applied when an ALJ's statements were "tantamount to a finding of current disability[.]" *Kelly*, 2007 WL 2021923, at *3. The commissioner's counsel disputed that the ALJ's comments in this case rose to that level; however, as noted above, I need not reach that point.

[6] At oral argument, the plaintiff's counsel challenged the commissioner's reliance on the Trumbull opinion on the basis that Dr. Trumbull did not have the benefit of review of later-submitted evidence, including the Poulopoulos opinion. Counsel for the commissioner objected that the plaintiff had waived this argument by failing to raise it in her statement of errors. *See, e.g., Farrin v. Barnhart*, No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("[I]ssues or claims not raised in the itemized statement of errors required by this

11

Second, as counsel for the commissioner noted at oral argument, this was not a case involving an absence of evidence during the relevant time period. Rather, the ALJ had the benefit of review of "contemporaneous medical evidence that [he] reasonably viewed as cutting against a finding of disability[,]" *McGlynn*, 2012 WL 2913535, at *4, deeming it "suggestive of an ability to perform within the [RFC]" during the relevant time period, Record at 25. Thus, even assuming *arguendo* that SSR 83-20 applied, it did not require that the ALJ call a medical advisor to infer the plaintiff's onset date of disability. *See also, e.g., Fischer*, 831 F.3d at 36 (assuming *arguendo* that SSR 83-20 applied, it did not require ALJ to call a medical advisor to infer the onset date of claimant's disability when "[t]he ALJ did not rely upon the absence of medical evidence but rather the existence of 'precise' medical evidence – the normal results of the diagnostic imaging – when concluding that [the claimant's] impairments had not reached disabling severity prior to her DLI").

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for*

---

court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted). In the alternative, she argued that the point was unavailing because Dr. Trumbull did have the benefit of review of all available evidence predating the plaintiff's DLI. I overrule the commissioner's objection, agreeing with the plaintiff's counsel that the point is not waived because it is in the nature of a reply to the commissioner's reliance on the Trumbull opinion. Nonetheless, the point is unavailing. As discussed above, the ALJ supportably gave little weight to the Poulopoulos opinion on the bases that it was predicated in part on the plaintiff's unreliable subjective reports and uncorroborated by the contemporaneous evidence of record.

*oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 21st day of October, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge